IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| PATRICK STANLEY,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER ON ADMINISTRATIVE APPEAL<br><br><br><br>Case No. 2:10-CV-1215 TS |

    This matter comes before the Court on Plaintiff Patrick Stanley's appeal from the decision of the Social Security Administration resulting in the termination of his supplemental security income ("SSI"). Having considered the arguments set forth by the parties, reviewed the factual record, relevant case law, and being otherwise fully informed, the Court will reverse the administrative ruling, as discussed below.

## I.  STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to determining whether its findings are supported by substantial evidence and whether the correct legal standards were applied.[1] Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2]  The ALJ is required to consider all of the evidence, although he or she is not required to discuss all of the evidence.[3]  If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[4]

The Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[5]  However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the ALJ's.[6]

Plaintiff raises only one issue in his brief: "Whether Patrick Stanley's Supplemental Security Income benefits should have been terminated even though he continues to suffer from ADHD, symptoms of Oppositional Defiant Disorder, learning disabilities, and depression that markedly limit his function in several different areas."[7]

---

[1] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

[3] *Id*.

[4] *Richardson v. Perales*, 402 U.S. 389, 402 (1981).

[5] *Shepard v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[6] *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

[7] Docket No. 14, at 2.

For the reasons discussed below, the Court finds that the ALJ's determination that Plaintiff's condition had "medically improved" is not supported by substantial evidence. Therefore, the Court will reverse the ALJ's decision and remand this matter for further proceedings.

## II.  BACKGROUND

A.    PROCEDURAL HISTORY

Plaintiff was awarded SSI for children in July 1999 upon a finding that he was disabled based on Listing 112.08.[8] Plaintiff's disability status was reviewed and, in March 2003, Plaintiff was informed that his benefits would cease. Plaintiff's request for reconsideration was denied and a hearing before an Administrative Law Judge ("ALJ") was held. After the hearing, the ALJ determined that Plaintiff was no longer eligible for SSI benefits and that cessation of those benefits was proper.[9] The Appeals Council[10] denied review and Plaintiff brought an action in this Court. This Court affirmed the Commissioner's decision and Plaintiff appealed to the Tenth Circuit Court of Appeals. The Commissioner then filed a Motion to Remand, which the Tenth Circuit granted. The case was then remanded to the ALJ to determine whether Plaintiff was entitled to SSI. On April 23, 2010, the ALJ issued a decision finding that Plaintiff's disability ended as of March 2, 2003.[11] This action followed.

---

[8] Tr. at 50.

[9] *Id*. at 15-28.

[10] *Id*. at 3-5.

[11] *Id*. at 405-32.

B.	MEDICAL HISTORY

As discussed in more detail below, the Court finds that there was insufficient evidence for the ALJ to find that Plaintiff's condition had medically improved by March 2003. As a result, the Court will limit its discussion of Plaintiff's medical history to the relevant time period: 1998 (when Plaintiff first applied for benefits) to 2003 (when Plaintiff's benefits were terminated).

Plaintiff was examined on March 23, 1999, at Willow Creek Pediatrics.[12] It was noted that Plaintiff was mean and aggressive at school, he was hyperactive, was breaking things, and did not do well in school. It was further noted that Plaintiff was in special education and was in need of special education testing.

Plaintiff was then examined by Michael A. Schreiner, Ph.D., on May 13, 1999.[13] During that examination, it was reported that Plaintiff was a "bully to others" and that he had "started a few fires."[14] It was also related that Plaintiff had killed a baby bird by throwing it off a building. It was further reported that Plaintiff did not mind his mother and refused to do what she said, that he had temper tantrums two to three times a day, and was frequently irritable. Plaintiff was reported to throw things when he became angry and recently put a dent in the refrigerator. It was also reported that Plaintiff would defecate in "odd places."[15]

---

[12]*Id*. at 169.

[13]*Id*. at 173-79.

[14]*Id*. at 173.

[15]*Id*. at 174.

The examination revealed that Plaintiff was in special education and had been held back in kindergarten. Plaintiff's mother reported that he was behind in reading, writing, arithmetic, and spelling. Plaintiff's mother also reported that Plaintiff had speech problems. Plaintiff's mother stated that Plaintiff had difficultly concentrating and was often off task. Plaintiff was reported to have beaten up another child and was a bully at school.

During the examination it was reported that Plaintiff had crying spells approximately twice daily. Though there was no evidence of suicidal ideation or past attempts, Plaintiff had become angry and stated "I wish I were dead."[16]

Testing revealed that Plaintiff had difficulty focusing and concentrating. Plaintiff was easily distracted. Plaintiff achieved a verbal IQ score of 94, a performance IQ score of 106, and a full scale IQ score of 99, meaning that he was functioning in the average range of intelligence.

Dr. Schreiner diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | Oppositional defiant disorder (ODD) |
| | Attention deficit/hyperactivity disorder, combined type, provisional |
| | Encopresis without constipation and overflow incontinence, provisional |
| | Phonological disorder |
| | Learning disorder NOS, provisional |
| Axis III: | Rule out skull fracture, by history |
| | Rule out headaches |
| | Rule out Asthmatic condition, seasonal |
| Axis IV: | Problems with academic system |
| | Problems with primary support group |
| Axis V: | Current GAF 50; highest GAF past year 55[17] |

---

[16]*Id*. at 176.

[17]*Id*. at 178.

Plaintiff returned to Dr. Schreiner for a follow-up evaluation on November 7, 2002.[18] The reason for the evaluation was "for possible problems of oppositional defiant disorder, ADHD, and learning disabilities."[19] At the time of the evaluation, Plaintiff was in the fifth grade, but was in resource classes and his mother reported that he was functioning on a third grade level in reading, writing, and math.

It was reported that Plaintiff got upset easily, had crying spells five to six times per week, and would have passive suicidal thoughts twice monthly, stating that he "does not want to live because he says he is 'stupid.'"[20]

When tested, Plaintiff achieved a verbal IQ score of 89, a performance IQ of 84, and a full scale IQ score of 86. As a result of these scores, Plaintiff was "functioning in the Low Average range of intelligence."[21] Plaintiff's verbal abilities were found to be "somewhat below average in several areas."[22] Additionally, Plaintiff "was well-below average" in the area of attention and concentration.[23]

Dr. Schreiner found that Plaintiff did not meet the criteria for a major depressive disorder, nor did he have a dysthymic condition. However, Plaintiff did have a depressive disorder, not

---

[18]*Id.* at 187.

[19]*Id.*

[20]*Id.* at 188.

[21]*Id.* at 190.

[22]*Id.*

[23]*Id.*

otherwise specified. Additionally, Dr. Schreiner found that Plaintiff "did not appear to meet current criteria for an oppositional defiant disorder."[24] The evaluation did find that Plaintiff met the criteria for an ADHD classification and that he was functioning in the low average range of intelligence.

    Dr. Schreiner diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | Attention deficit/hyperactivity disorder, primarily inattentive type |
| | Depressive disorder NOS |
| | Reading disorder, provisional |
| | Mathematics disorder, provisional |
| | Disorder of written expression, provisional |
| | Oppositional defiant disorder (ODD), by history |
| | Phonological disorder, by history |
| | Learning disorder NOS, by history |
| Axis IV: | Problems with academic functioning |
| | Problems with social functioning (mild) |
| Axis V: | Current GAF 45; highest GAF past year 50[25] |

On December 20, 2002, Manya Atiya, M.D., a state agency medical consultant completed a Childhood Disability Evaluation form.[26] Dr. Atiya concluded that Plaintiff's condition had medically improved. Dr. Atiya also found that Plaintiff did not meet, equal, or functionally equal any listed impairment. Finally, Dr. Atiya concluded that Plaintiff had a less than marked limitation in acquiring and using information; a less than marked to marked limitation in attending and completing tasks; a less than marked limitation in interacting and relating with

---

[24] *Id*. at 191.

[25] *Id*. at 191-92.

[26] *Id*. at 240-45.

others; a less than marked limitation in moving about and manipulating objects; no limitation in caring for himself; and no limitation in health and physical well-being.

On March 4, 2003, a second state agency medical consultant reviewed and concurred with Dr. Atiya's findings.[27]

Plaintiff underwent speech and language testing on February 13, 2003.[28] According to the testing, Plaintiff ranked below the mean for overall language ability.[29]

C.  OTHER EVIDENCE

A 1998 form from his school indicates that Plaintiff had a learning disability and required special education services.[30]

On March 18, 1999, Plaintiff's teacher reported that Plaintiff was in resource for 90 minutes per day for reading and math, and 30 minutes per week for speech. Plaintiff's teacher reported that Plaintiff "is impulsive and struggles with his work. He is behind the other students in all content areas."[31] When asked about his social development, Plaintiff's teacher reported that Plaintiff was alienating his peers. "He is often disrespectful of others and has difficulty keeping friends because he annoys or bothers them."[32] Plaintiff's teacher again noted Plaintiff's

---

[27]*Id.* at 222-23.

[28]*Id.* at 193-209.

[29]*Id.* at 194.

[30]*Id.* at 142.

[31]*Id.* at 137.

[32]*Id.* at 138.

impulsiveness stating that he "will usually rush through a task and do it all wrong rather than thinking it through."[33]

On October 2, 2002, Plaintiff's resource teacher stated that Plaintiff was involved in resource for reading/handwriting and attended resource classes for 60 minutes each day, four times per week.[34] Plaintiff's teacher indicated that though Plaintiff was in the fifth grade, his reading/handwriting was on a second grade level. Plaintiff's teacher also indicated that Plaintiff had "significant difficulty staying on task" and that he was easily distracted.[35] That same form indicated that Plaintiff's behavior was acceptable and that he was able to interact appropriately with his peers.

A Disability Hearing Officer completed a report on June 11, 2003.[36] That report contains a wide range of information. On the one hand, it was noted that many of Plaintiff's behavioral problems had improved. On the other hand, the reported noted that Plaintiff had concentration problems, was easily distracted, and was easily frustrated. Additionally, the report noted that Plaintiff had threatened to kill himself and had suffered from depression. At the time of the evaluation, Plaintiff was in resource classes for part of the day (approximately 30 minutes per day).

---

[33]*Id*. at 139.

[34]*Id*. at 143-45.

[35]*Id*. at 145.

[36]*Id*. at 225-35.

D.     THE FIRST ADMINISTRATIVE HEARING AND ALJ DECISION

The first administrative hearing was held on January 25, 2005.[37] At the hearing, the medical expert, Dr. Houston, provided little testimony on the issue of medical improvement. In comparing the two reports prepared by Dr. Schreiner, Dr. Houston stated that the later diagnostic impression was less severe, but noted that Plaintiff's GAF score declined from 50 to 45.[38] Dr. Houston further testified that Plaintiff's drop in IQ score was significant, though he noted that it was still within the low average range.[39] Dr. Houston later testified that there was some medical improvement between 1999 and 2002.[40]

Plaintiff provided testimony at the hearing. Plaintiff stated that he gets angry and punches or kicks holes in the walls of his house.[41] Plaintiff also testified that he picked on his younger brother.[42] Plaintiff testified that his reading was on par with his classmates, but that he struggled with reading and was easily distracted when it came to math.[43]

---

[37] *Id*. at 276-342. The ALJ had attempted to hold the hearing twice before, but it had been continued because Plaintiff failed to appear at the first hearing, *see id*. at 254-68, and Plaintiff's attorney failed to appear at the second. *Id* at 269-75. The issues discussed at those truncated hearings are not relevant to the issues before the Court.

[38] *Id*. at 304.

[39] *Id*. at 322.

[40] *Id*. at 325.

[41] *Id*. at 332-33.

[42] *Id*. at 333.

[43] *Id*. at 333-34.

10

Plaintiff's mother testified that she had a hard time getting Plaintiff to do what she asks and that this problem had gotten worse.[44]

The ALJ issued his first decision on April 20, 2005.[45] Of relevance here, the ALJ relied on Dr. Houston's testimony at the hearing and found that Plaintiff's impairments had undergone medical improvement.[46]

E.     POST-REMAND ADMINISTRATIVE HEARINGS AND ALJ DECISION

As set forth above, this matter was remanded upon motion of the agency. After this matter was remanded, the ALJ conducted additional hearings and issued a second decision.[47]

The first substantive hearing was held on May 20, 2009.[48] At that hearing, the medical expert, Dr. Moore, testified that there was insufficient evidence of medical improvement.[49]

Another hearing was held on August 20, 2009.[50] Dr. Houston, who had testified at an earlier hearing, provided testimony. Dr. Houston's testimony on the issue of medical improvement was somewhat confusing. At one point, Dr. Houston seemed to indicate that Dr.

---

[44] *Id.* at 338-39.

[45] *Id.* at 15-28.

[46] *Id.* at 17.

[47] The ALJ held three different hearings on remand. The first hearing was restricted to counsel's continued representation of Plaintiff, *see id.* at 703-20, and will not be discussed further.

[48] *Id.* at 666-702.

[49] *Id.* at 673-74.

[50] *Id.* at 621-65.

Schreiner's second report indicated that Plaintiff had improved.[51] However, only moments later, Dr. Houston indicated that there had been no change between 1999 and 2002 and, thus, Plaintiff had not improved.[52]

The ALJ issued his second decision on April 23, 2010.[53] The ALJ found that medical improvement had occurred.[54] In reaching this conclusion, the ALJ reviewed the evidence discussed above, specifically Dr. Schreiner's two evaluations, as well as the opinions of the state agency consulting examiner. The ALJ rejected counsel's arguments that Plaintiff's decrease in IQ contradicted any finding of medical improvement. The ALJ found that Plaintiff's IQ scores did not show severe impairment. Thus, the ALJ found that while the lower IQ scores did not indicate medical improvement, they also did not show no improvement. Based on all of the evidence, the ALJ concluded that "claimants impairment has improved significantly."[55]

## III. DISCUSSION

In order to be entitled to social security benefits, a minor child must demonstrate that he or she "has a medically determinable physical or mental impairment, which results in marked and

---

[51] *Id.* at 643.

[52] *Id.*

[53] *Id.* at 405-32.

[54] *Id.* at 413.

[55] *Id.* at 417.

severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[56]

Once the child is determined to have a disability, the Social Security Administration must evaluate the child's impairment from time to time to determine if he or she is still eligible for benefits.[57] This evaluation is called a continuing disability review.[58] The procedure for the continuing disability review is set forth in 20 C.F.R. § 416.994a.

First, the ALJ considers whether there has been medical improvement in the child's impairment or impairments since the prior determination of disability.[59] If there has been no medical improvement, the child's disability continues unless certain exceptions apply.[60] Second, the ALJ considers whether the child's impairment or impairments still meets or equals the severity of the listed impairment that it met or equaled at the time of the last evaluation.[61] Finally, if there has been medical improvement and the child's impairment no longer meets or equals a listing, the ALJ considers whether, considering all of the child's current impairments, the child is still disabled.[62]

---

[56] 42 U.S.C. § 1382c(a)(3)(C)(i).

[57] 20 C.F.R. § 416.989.

[58] *Id.*

[59] *Id.* § 416.994a(b)(1).

[60] *Id.*

[61] *Id.* § 416.994a(b)(2).

[62] *Id.* § 416.994a(b)(3).

Plaintiff argues that the ALJ erred at every step of this process. Because the Court agrees that the ALJ erred in determining that there had been medical improvement, the Court need only discuss that issue in this Order.

As stated, at step one, the ALJ must determine whether the child experienced medical improvement in his impairment or impairments since the prior determination of disability.[63] "Medical improvement" is defined as "any decrease in the medical severity of [the child's] impairment(s) which was present at the time of the most recent favorable decision that [the child was] disabled or continued to be disabled."[64] "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, or laboratory findings associated with [the child's] impairment(s)."[65] Though "the decrease in severity may be of any quantity or degree, [the ALJ] will disregard minor changes in [the child's] signs, symptoms, and laboratory findings that obviously do not represent medical improvement and could not result in a finding that [the child's] disability has ended."[66]

To be affirmed, the ALJ's determination must be based on substantial evidence. Substantial evidence "requires more than a scintilla, but less than a preponderance."[67] Having

---

[63] *Id*. § 416.994a(b)(1).

[64] *Id*. § 416.994a(c).

[65] *Id*.

[66] *Id*.

[67] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

reviewed all of the evidence, the Court concludes that the ALJ's determination of medical improvement is not supported by substantial evidence.

This case presents a difficult question because there is so little evidence from the relevant time period: the period from when Plaintiff first applied for benefits and when those benefits were terminated. The bulk of the evidence comes from the two reports prepared by Dr. Schreiner. It is true that the second report by Dr. Schreiner offers some positive signs. Specifically, Plaintiff was found not to meet the criteria for oppositional defiant disorder or a major depressive disorder. However, the report also diagnoses Plaintiff with ADHD and depressive disorder. Further, Plaintiff's IQ scores decreased dramatically and his GAF score dropped from a 50 to a 45. This does not provide substantial evidence of medical improvement and, even if it did show some level of improvement, it is of the type that would normally be disregarded by the ALJ under the regulations.[68]

When asked about these reports at the hearings, the medical experts gave differing opinions. At the first hearing, Dr. Houston stated that the diagnostic impression from the second evaluation was less severe than the first. However, Dr. Houston made note of the drop in GAF score and testified that the drop in Plaintiff's IQ was significant. At a later hearing, Dr. Houston testified that there was little difference between Dr. Schreiner's two evaluations. Thus, Dr. Houston's testimony does little to support a finding of medical improvement. Another medical

---

[68] 20 C.F.R. § 416.994a(c) (The ALJ "will disregard minor changes in [the child's] signs, symptoms, and laboratory findings that obviously do not represent medical improvement and could not result in a finding that [the child's] disability has ended.").

expert, Dr. Moore, was more direct on the issue, stating that there was insufficient evidence in the record to support a finding of medical improvement.

The Court will acknowledge that there is some evidence to support a finding of medical improvement. However, the Court finds that this evidence does not rise to the level of substantial. For example, Dr. Atiya, the state agency examiner, opined that there had been medical improvement. A second state agency physician agreed with Dr. Atiya's findings. However, neither state agency physician actually examined Plaintiff. Further, Dr. Atiya's conclusion was largely based on the improvement of Plaintiff's behavioral issues. However, according to Dr. Schreiner's second evaluation, many of Plaintiff's behavior problems remained, such as frequent crying spells and suicidal thoughts. Further evidence, such as the testimony of Plaintiff's mother at the initial hearing, also contradicts this conclusion. Additionally, Dr. Atiya did not address the decrease in IQ and GAF scores. Finally, the state agency examiners were relying on the same evidence, set forth above, that does not provide substantial evidence of medical improvement.

In sum, the Court finds that there was not substantial evidence upon which the ALJ could find medical improvement. Throughout the relevant time period, there was insufficient evidence for the ALJ to conclude that Plaintiff's impairment(s) had improved. At best, Plaintiff's impairment(s) remained the same. The Court is sympathetic to the position of the ALJ in this case. It is questionable whether Plaintiff qualified for benefits when he received them. However, that is not an issue that either this Court or the ALJ was asked to decide. The issue here is whether there had been medical improvement and, for the reasons stated, the Court finds that

there was not substantial evidence to support the ALJ's finding on that issue.[69] Therefore, the Court need not consider the parties' arguments concerning the second and third steps of the continuing disability review.

## IV. CONCLUSION

It is therefore

ORDERED that the ALJ's decision is REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for the purposes of conducting additional proceedings as set forth herein.

The Clerk of Court shall enter judgment remanding this case and shall close this case forthwith.

DATED   May 1, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[69] The Court has not been asked and, therefore, makes no finding on whether one of the exceptions in 20 C.F.R. § 416.994a(e) or (f) applies here.